Page Are you going to copy? Copy. Not right now. Later. Thank you very much. Do you want a copy? Yeah. I guess I don't have one. I thought I did. Do you want a copy? Oh, I have my book. I don't use what I've got in the bag. Okay. The next case is 515-0098, People v. Wade Logan. Party's ready? Okay. You may proceed. As an assistant defendant of Levi Harris and here on behalf of my client who is the appellant, Mr. Wade Logan, as an initial matter I wanted to make sure that the court got a copy of the motion to cite additional authority that we got filed yesterday. Yes, we got a copy and we're going to grant the motion and then allow the state ten days. Is that okay? I'll address one of the cases. So you don't want to file any written?  I'm going to give you ten days. We're going to issue an order allowing the state ten days so that if you want to make something in writing, it can be included in the record. Okay? All right. Then you may proceed. So we're going to grant this motion and allow the state ten days. Okay. Thank you, Your Honor. May it please the court, this is a very simple case. It's a dismissal from a first stage post-conviction petition. My client, Mr. Logan, claims that his 53 and a half year sentence that he received as part of a guilty plea for a murder committed when he had just turned 17 was an unconstitutional de facto life sentence under Miller v. Alabama and its Illinois and federal progeny. Because he would be 70 by the time that he was released from prison and would not have a meaningful opportunity at rehabilitated life. This claim has an arguable basis in fact in law and the court should either remand for Mr. Logan to be resentenced under the new sentencing statute, which I think courts are holding, you know, if you're being resentenced and there's a change in the sentencing, you can choose to be sentenced under whichever version was in effect at the time of your sentencing. Or to go back and withdraw his plea or to reverse and remand for second stage proceedings. So again, to split that up, kick it back to the circuit court for proceedings on the plea or kick it back to the circuit court for second stage proceedings on the post-conviction petition. Do you think that we have the authority to do that, kick it back for a plea to the trial court in light of the fact that this came to us on a post-conviction petition? Your Honor, I do, because I think that everything that Your Honors need to make this decision is here. I think essentially this is a legal claim. I don't think the state, I don't think the state disputes most of the facts here. So I think you do, both in that regard, I think there's, we cite the Davis case, which I think they did that. I know they did in this Dimitri Buffer case, which leave to appeal has been taken, so we'll see what the Supreme Court comes out and says about that. But certainly in the interest of justice, I believe that you have that. But at the very least, of course you have the authority to kick it back for second stage proceedings. So the claim has arguable bases in fact and law. First of all, we know now that Miller requires several factors to be considered before we can sentence juveniles to mandatory life. Those are on page 16 of my brief. I don't necessarily need to read them. I think we kind of have the idea. Miller has been found to be retroactive or held to be retroactive in Montgomery and Davis. It's been held to apply to discretionary life sentences in Richard Coleman and to apply to de facto life sentences in Reyes in the state. But just what constitutes a de facto life sentence is an open question in Illinois. And for that purpose, we cited this Buffer case where the Supreme Court has taken me to appeal to decide that question. You read the state's legal appeal. There seem to be two or three different closely related questions. But the gist of them is what does the court mean by de facto life? We know in Reyes the court said 89 years. If a guy has spent 89 years in jail when he's 16 or 17, however old he was there, that's de facto life. We know that Reyes also said if it's 32 years, that is not de facto life. So somewhere in that target is where the Supreme Court is going to end up. But the fact that this is an open question is all that my client needs to get to second stage of a post-conviction petition. It's not frivolous. It's not a crazy claim on its face. If it is, I guess the Illinois Supreme Court loves wasting its time. So this claim has an arguable basis in law. But it also has an arguable basis in fact where my client got 53 1⁄2 years, which would have him getting out at 70 1⁄2, maybe closer to 71 years old. That's de facto life. We'll see. But our argument is it's at least arguably de facto life. What case would you cite to say that 70 1⁄2 is a de facto life sentence? Well, Your Honor, I think we cited the Sanders case, which was an unpublished case in our brief and has went to the Supreme Court on a different issue and came back and they affirmed the central harm, which was that 49 years in that case was a de facto life sentence. So if a juvenile who was 16, 17 years old serving 49 years, if that's de facto life, then 53 1⁄2 would be de facto life. So what you have is an unpublished case. No, Your Honor, it is published now. That's okay. It's Sanders. And also, I mean, there are several cases. This Buffer case, again, leave to appeal has been taken. But we have the cases that we cite from outside the state, which our court has cited approvingly either in People v. Reyes or People v. Holman or both the Bear Cloud v. State in Wyoming and the State v. Null in Iowa, respectively. In those cases, it was 45 years and 52 1⁄2 years that were de facto life sentences. That is the conundrum we're facing in Null and Reyes. I mean, what is life? I mean, if you look at the life tables, people are living until 89. I mean, you know. Well, there are life tables for people who are 89, but that is not what the life tables for people who are in Department of Corrections are. Right. And particularly, you know, these cases, a lot of them have a lot of social science data and so forth. If you look particularly at people who go in when they're juveniles, they have the very worst outcomes. They're picked on more. They're, you know, molested. They have no hope. They never get to come of age as a normal person. So. Well, the law doesn't prevent you from sentencing someone to mandatory life. You just have to make sure that discretionary factors are considered, right? That's correct. And they were not here. Mr. Logan's claim also is related to the fact that when he pleaded guilty, he was being told he would get 107 years or could get 107 years if he were extended. I don't think anybody would argue that that's unquestionably de facto life. But his claim is that had this been law at the time of the plea, the judge would not have accepted this plea. He wouldn't have entered this plea because this wasn't a good deal, knowing that he had the entitlement to have this particularized finding and consideration of his youth. And I don't even know if the state would have offered it, but, of course, that's not what our claim is based on. I make an argument that the Miller factors applied to our case would be sympathetic. That's something for the circuit court to work through when he goes back. The state says that this doesn't apply to negotiated pleas, but plea agreements were specifically contemplated in Miller as one of the things that juveniles were not good at, that we needed somehow to mitigate the consequences of that. Nothing about Miller's language about children being different or being very rarely incorrigible or so set in stone that they're beyond rehabilitation. None of that applies only to trials. It applies to juveniles across the board. And nothing about our new Miller sentencing statute is limited to trial situations. The state's brief didn't address any of those facts, and the three or four cases that it cited on these points did not address those facts either. Your Honor, we also listed policy reasons why this should not be the case. You know, a waiver is an intentional relinquishment of a known right. This is an unknown situation, and there's no reason to hold people accountable for something that doesn't even come into existence for 15 years down the road after the plea. I think I'll save the rest of my breath for rebuttal, Your Honors. But all we need to have here- You don't get additional time. Well, I know that. I know that. I got the rest of my time, just my breath. Okay. We appreciate that. The claim has arguable bases, in fact. Thank you. I'm going to steal some more of this water. Take as much as you would like. Thank you, Your Honor. May it please the Court. Good morning, Your Honors. Counsel. Good morning. My name is Erin Wilson-Wigler, and I appear on behalf of the State. I can't hear you. My apologies, Your Honor. I'm a little hard of hearing. I'll try to speak up. Your Honors, as the defendant noted, this appeal presents a purely legal question of whether or not Miller Protections extends in the context of a fully negotiated plea agreement. The defendant correctly argues that in Illinois, Miller Protections do extend to mandatory and discretionary life sentences, as well as to de facto life sentences. However, the common thread among all of these scenarios is that in each case, there is a sentencing hearing at which the trial court accepts evidence of mitigation and aggravation and uses its discretion to craft and appropriate a sentence. And that is not the case in proceedings involving a fully negotiated plea agreement in which the State and the defendant agree to a specific term of years. But the trial court doesn't have to accept a fully negotiated plea agreement, right? Correct, Your Honor. If the trial court is approached with a fully negotiated plea agreement, the trial court has three options. It may concur in the agreement, it may conditionally concur in the agreement, or it may reject the agreement outright. Right. So why should we treat a fully negotiated plea agreement, considering the fact that the trial court could reject it, any differently than the Miller? Because in a situation where a trial court concurs without condition in the plea agreement, it is not exercising its discretion with respect to sentencing. It is not weighing factors, there is no sentencing hearing, and the court's discretion is effectively replaced by the plea agreement itself. But the court has to go through some exercise in order to determine whether to concur, because it could reject. How does it reach that point if it doesn't go through some analysis of the negotiated plea? How does it reach what point, Your Honor? Whether to accept. Well, in that context, the trial court is ascertaining whether or not the plea agreement was knowingly and voluntarily entered into by the defendant. It is not necessarily weighing factors in mitigation or really addressing the sentence. But if you look at those factors in mitigation, such as, for example, the juvenile or the young person's mental capacity, do you think that has anything to do with knowing and voluntariness entering into a plea agreement? Perhaps to some extent, Your Honor. But again, in the situation where a trial court concurs in the plea agreement without condition, it's not exercising its discretion with respect to sentencing. It's not crafting the sentence. It's merely adopting the sentencing provision that the parties have agreed to. And I think that's part of the issue that the defendant raises in his reply brief when he makes the argument that trial courts are not strictly bound by plea agreements. That's referring to a scenario in which the trial court conditionally concurs, which would trigger the protections set forth in Illinois Supreme Court Rule 402D3. And pursuant to that rule, if the trial court does intend to exercise its discretion with respect to sentencing, the trial court must state on the record that it so intends to exercise its discretion, explain what sentencing options it intends to reserve, and then ask whether the defendant chooses to go on with his guilty plea in light of this limited concurrence. So are you saying that Miller is never a plicable and fully negotiated plea? In a fully negotiated plea, no, Your Honor. Okay. However, if the trial court conditionally concurs, it's the state's position that that takes that fully negotiated plea agreement and effectively turns it into a partially negotiated plea agreement because the trial court is reserving its sentencing discretion, which thereby would trigger Miller protections. They're different scenarios, and they call for different procedures, and that's recognized by our Supreme Court rules with respect to plea bargaining. The fact that you're arguing that a fully negotiated plea doesn't fall within Miller v. Alabama and considering the very low threshold for the gist of a constitutional claim, do you think that this argument made by the defendant doesn't create the gist of a constitutional claim? Can you address that? It is not, Your Honor, because to proceed to a second stage post-conviction hearing, the defendant must present some sort of cognizable constitutional claim, and the defendant has not done so here. I think the word is the gist of a constitutional claim, not a constitutional. I mean, it's a very low threshold. It is a low threshold, Your Honor, but the claim has to exist by law. And here there is no law in Illinois that holds that a nondiscretionary sentence imposed by a trial court pursuant to a fully negotiated plea agreement is that Miller protections extend to such a scenario. In fact, there's only one court in Illinois who has addressed this issue in a published opinion, the First District's decision in People v. Applewhite, and the defendant has not addressed that decision in his opening brief, nor did he address it at oral argument today. In Applewhite, the First District noted that unlike in Miller and its progeny, the defendant there had agreed to and negotiated his 45-year sentence for first-degree murder. Because the defendant negotiated and agreed to his sentence, he effectively waived the right to present mitigating factors or to challenge that sentence in collateral proceedings. And the First District therefore held that by law, the defendant may not challenge his or her sentence imposed to a fully negotiated plea agreement based on Miller protections. And it should be also noted that in Holman, our Supreme Court recently concluded that the juvenile defendant there was capable of waiving his right to present mitigating evidence pursuant to Miller by advising his attorney at the sentencing hearing that he didn't want to do so. If a juvenile can effectively waive the opportunity to present Miller evidence at sentencing, then such a defendant should likewise be able to waive that opportunity by entering into a fully negotiated plea agreement. Was Applewhite a fully negotiated plea? Yes, it was, Your Honor. So there's really no distinction? No distinction. And I think it was like 45 years there. Correct, Your Honor. The court in Applewhite did not address the question of whether or not there was a de facto life sentence because it found by law that Miller did not apply in that context. And because Holman held that the juvenile defendant was capable of waiving the opportunity to present Miller factors, the Supreme Court's holding in Holman is not only consistent with but also provides support for the first district's holding in Applewhite. And this decision in Applewhite is consistent with our principles of contract and finality. It's been long recognized that by entering into a plea agreement, a defendant waives all non-jurisdictional defenses and defects, and this includes alleged constitutional violations. To that point, defendants' motion to cite additional authority includes a request to cite to a new United States Supreme Court case, Class v. United States. There, the Supreme Court recognized a narrow exception to this rule, essentially holding that if the statute to which a defendant pleads guilty is deemed unconstitutional, that defendant may still challenge his conviction despite the plea of guilt. However, the Supreme Court also underscored the general notion that a negotiated plea waives the rights to appeal and collaterally attack a sentence imposed thereto. Thus, Class does not stand for the broad proposition that any constitutional claim can defeat a fully negotiated plea, and it also does not alter Illinois' long tradition of recognizing that a guilty plea waives all non-jurisdictional defects. And this practice is good policy because our plea agreements and plea negotiation policies are rooted in contract. If you are able to challenge a sentence after the fact, it deprives the State of the benefit of its bargain. And this is why we have Illinois Rule 604D, which requires the defendant to withdraw his or her guilty plea in order to challenge the sentence imposed thereto. That's also why we have Rule 402D3, which creates express procedures for the trial court to comply with if it intends to not move forward with the sentencing provision in the plea agreement and instead exercise its discretion. And so for these reasons, this Court should join the First District in concluding that, by law, Miller does not extend in the context of a fully negotiated plea agreement. In doing so, it should likewise find that the defendant's post-conviction petition was properly dismissed at the first stage. And if there are no further questions, the State will rest on its brief. Thank you, Your Honors. Why didn't you address people versus Applewhite? Your Honor, I did at some length in my reply brief. I can do so again. Bear me in the circumstance, if you would. What's that? I'd like you to respond to her argument. Okay. The response to her argument is that Applewhite said that the sentencing statute, the Miller sentencing statute, only applied prospectively and had no bearing on that case. We know now that that is not correct from Holman. The Court distinguished Reyes and said, well, this guy agreed to his sentence, so Reyes doesn't apply. But it didn't say why that's the rule. It just said that's the rule. So it's not grounded on any sort of reasoning. The Court also held that his sentence was not a de facto life sentence. It didn't explain how it arrived at that conclusion. But even if it had, our guy's in there for eight and a half, four years beyond 62. So, you know, I just think Applewhite's wrongly decided, but it's also distinguishable from the facts of our case. Briefly, on the point of what is a de facto life sentence, I think that a quote from that Buffett court should boost this Court's morale, if you will, because the Court said we recognize this is an open question, but it says we do not see how justice is better served by avoiding the question. So I would encourage your honors to go ahead and weigh in on that. On the matter of whether this applies in the guilty plea context, counsel said a couple times that the judge here did not exercise any discretion in this plea, in accepting this plea. I don't agree with that. I think your point is well taken. Then he has to do some kind of weighing to see whether this is a just plea before taking it. I think one time in my career have I seen on the record somebody, a judge, reject a plea. And in that case he thought the sentence was too low for what the guy was accused of. But if he's not exercising discretion, I think that's kind of the point of Miller. Some kind of discretion has to be provided to weigh these factors in juveniles. That was the original holding of Miller, that the mandatory nature of those life sentences was unconstitutional. Judges have to weigh in on this. Let's see, we talked about that. Talking about the class case in the United States Supreme Court, that was mostly dealing with the federal, I think, rural criminal procedure that allows the government to extract from a defendant the agreement that he will not appeal his sentence if he takes a plea. This was a limited exception to that rural criminal procedure, but we cited it just for its broader discussion of the fact that basically when you're entering a plea, you're waiving a lot of rights, but you're waiving contemporary rights. You're waiving the right to go to trial, the right to put your witnesses to test, the right to offer evidence on your behalf. You're not waiving everything that could possibly inherit to your benefit in the future. Counsel mentioned contract principles for pleas. I don't remember that much about contracts. I think that was an 8 a.m. class, but I think I remember that even contracts have unconscionability exceptions to them where courts can refuse to enforce them on that grounds, and I think that would be well taken here as well. Briefly, Your Honors, I just want to go through the policy reasons why I don't think that negotiated pleas should be exempt from this Miller protection. We know that the whole point of Miller is mitigating the decisions that juveniles make to do bad things. Whether it's murder, in some cases aggravated battery or whatever, we say, look, give them another chance. They weren't thinking. They were impressionable. They had a bad home life, whatever. If we mitigate their decision to commit crime, why wouldn't we mitigate their decision hastily to enter into a plea? The state's position discourages pleas because you have to tell it then, okay? If you take this plea, then every possible thing that could change about the law in the future, no matter if you're in here for 53 1⁄2 years, you can't avail yourself of it. What kid or what person would call that a knowing plea if he had to enter it with that in mind? The state's position looks backward and punishes people who cooperated with the state and entered these pleas. And at the very least, I think Your Honor pointed out that this is an open question. At the very, very least, this needs to go back to the circuit court for more litigation. So thank you, Your Honors. We've just asked for a relief statement now, please. Thank you. Okay, this matter will be taken under advisement and we'll issue an order in due course.